UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASSANDRA LACKMAN, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>BLAZIN WINGS, INC., a corporation; BUFFALO WILD WINGS, INC., a corporation; INSPIRE BRANDS, INC., a corporation, and DOES 1 through 25, inclusive,<br><br>        Defendants. | Case No.: 3:20-cv-01256-BEN-AHG<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 45 and 46]** |

   This case arises out of a lawsuit filed by Plaintiff Cassandra Lackman ("Plaintiff") against Defendants Blazin Wings, Inc. ("Blazin Wings") and Inspire Brands, Inc ("Inspire") (collectively "Defendants").[1]  Plaintiff seeks damages from Defendants stemming from their alleged treatment of the Plaintiff following her pregnancy and

---

[1] Plaintiff also named Buffalo Wild Wings, Inc. and Does 1-25 inclusive in this suit.  In the Parties' pleadings on this matter, the Parties agreed that Buffalo Wild Wings, Inc. should be dismissed from the suit.  The Court agrees and dismisses defendant Buffalo Wild Wings, Inc.  The Parties are now through the discovery phase and, based on the pleadings, this Court does not find Doe defendants appropriate at this stage.  Accordingly, Does 1 through 25 are dismissed from this action. *See Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980)

1

subsequent employment termination after the Plaintiff completed her maternity leave. Second Amended Complaint ("SAC"), ECF No. 22. The matter comes before the Court on the parties' cross-motions for summary judgment or partial summary judgment.[2] ECF Nos. 45 and 46. Each of the eleven claims for relief are based on California state law.

Based on the parties' briefs, evidence submitted, and applicable law, the Court: (1) **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's First Claim for Relief; (2) **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Second Claim for Relief; (3) **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Third Claim for Relief (4) **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's Fourth Claim for Relief (5) **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's Fifth Claim for Relief (and also **DENIES** Plaintiff's Motion for Summary Judgment on that claim); (6) **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Sixth Claim for Relief; (7) **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Seventh Claim for Relief; (8) **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Claim for Relief; (9) **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Ninth Claim for Relief; (10) **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Tenth Claim for Relief; and (11) **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Eleventh Claim for Relief.

I.  **BACKGROUND**

Plaintiff began working as a server at the Santee Buffalo Wild Wings restaurant in April of 2013. Pl.'s Opp'n to Defs.' Mot. Summ. J. 5, ECF No. 47. In May of 2018, Plaintiff informed restaurant management that she was pregnant. *Id.* Plaintiff asserts that after informing management, she was criticized and received rude comments about her pregnancy. *Id.* On October 24, 2018, Plaintiff's physician placed her on pregnancy-

---

[2] Plaintiff seeks summary judgment only on her Fifth Claim for Relief (Failure to Engage in the Interactive Process); Defendants seek summary judgment on all claims.

related work restrictions, which restricted Plaintiff from: (1) standing and walking more than 50% of her shift; (2) bending and twisting from more than 25% of her shift; (3) lifting, pushing, and pulling more than 20 pounds, and (4) fully restricted her from climbing ladders or scaffolds. *Id.* at 5-6.

Plaintiff presented her doctor's note outlining these restrictions to the restaurant's general manager, James Dean, on October 28, 2018. *Id.* at 6. Dean told Plaintiff that they would not be able to make work accommodations that fit with the restrictions contained in the doctor's note. *Id.* Plaintiff then brought her letter to a different manager, Hospitality Manager Donnell Jackson, who also informed Plaintiff that accommodations would not work based on her restrictions. *Id.* at 7. Jackson noted in a memo, "[d]ue to the nature of our business [] and her job duties[,] we are unable to accommodate Cassandra Lackman's Doctor's order for duty modification. Therefore she will have to be off during the duration of the note." Pl.'s Ex. 13, *Id.* at 163. Plaintiff argues that Dean and Jackson's failure to engage in a meaningful dialogue regarding accommodations violates California Government Code §12940(n).

Plaintiff was placed on Pregnancy Disability Leave ("PDL") on October 29, 2018. Defs.' Mot. Summ. J. 14, ECF No. 46. Plaintiff received a letter from Defendants' leave management organization, Matrix, specifying the leave periods Plaintiff was granted and denied. Plaintiff's California PDL was approved through February 12, 2019. California Family Rights Act and Family Medical Leave Act leave, both of which would have run through March 31, 2019, were denied. *Id.* at 180. Plaintiff understood she needed to notify Matrix when she gave birth; she never did. *Id.* at 104. Plaintiff was also informed if she needed to extend her leave for any reason, she needed to contact Matrix. *Id.* at 180. While Defendants quit using Matrix's services on December 31, 2018 (*id.* at 281), any attempt by the Plaintiff to reach Matrix would have been documented in her Matrix file, to which Defendants maintained access even after December 31, 2018. *Id.* at 285-86.

On March 6, 2019, nearly four weeks after Plaintiff's leave expired, Tracy Woollen, an employee in Defendants' benefits department, reviewed a list of employees

whose leaves of absence extended beyond their approved dates. Following confirmation that Plaintiff had not sought further leave or had communicated with her management in any other way, Plaintiff's employment was terminated effective March 10, 2019. *Id.* at 195. Plaintiff was one of many who were terminated as part of this process. Plaintiff did not log into the Matrix app to attempt to upload supporting documentation for an extension of her leave until March 8, 2019, after the notice of termination. *Id.* at 110.

## II.  LEGAL STANDARDS

### A.  Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it could affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence, viewed in light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The party seeking to defeat summary judgment must come forward with affirmative evidence from which a reasonable jury could render a verdict in that party's favor. *Id.* at 252. However, the nonmoving party's mere allegation that factual disputes exist between the parties will not defeat an otherwise properly supported motion for summary judgment. *See* Fed. R. Civ. P. 56(c); *see also Phytelligence, Inc. v. Washington State Univ.*, 973 F.3d 1354, 1364 (Fed. Cir. 2020) ("Mere allegation and speculation do not create a factual dispute for purposes of summary judgment.") (quoting *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996)). Additionally, while the Court will draw all reasonable inferences in the non-moving party's favor and believe the evidence of the non-moving party, the Court will not draw unreasonable inferences and cannot believe evidence that does not exist. *Cf. Anderson*, 477 U.S. at 255.

### III. Rulings on Parties' Evidentiary Objections

The parties filed the following evidentiary objections: (1) Plaintiff's objections to evidence submitted by Defendants in support of Defendants' Summary Judgment Motion ("Objection Set No. 1"); (2) Defendants' objections to evidence submitted by Plaintiff in opposition to Defendants' Summary Judgment Motion ("Objection Set No. 2"); (3) Plaintiff's objections to evidence submitted by Defendants opposing Plaintiff's Summary Judgment Motion ("Objection Set No. 3"). The Court rules as follows on the parties' objections.

<u>Objection Set No. 1</u>:  All objections are overruled.

<u>Objection Set No. 2</u>:  Objections relating to Exhibits 9 and 10 of Plaintiff's Deposition are sustained. All other objections are overruled.

<u>Objection Set No. 3</u>:  The sole objection is overruled.

### IV. DISCUSSION

#### A. Plaintiff's First, Second, and Third Claims for Relief

Plaintiff alleges gender discrimination, disability discrimination, and failure to prevent discrimination respectively in her first, second, and third claims for relief. As the facts and arguments behind the claims are identical, the Court addresses them all together. Plaintiff alleges Defendants took adverse actions against her because of her pregnancy and that she was ultimately terminated from her position due to her pregnancy. Defendants state that Plaintiff was not selected for promotion for reasons independent from Plaintiff's pregnancy and that Plaintiff was terminated form her position for taking excess leave.

To prove a prima facie case for disability discrimination under California law, Plaintiff must show she (1) had a disability; (2) was otherwise qualified to do her job with or without reasonable accommodation, and; (3) was subjected to an adverse employment action because of her disability. *Higgins-Williams v. Sutter Medical Foundation*, 237 Cal. App. 4th 78, 84 (2015). Plaintiff must also show that the discrimination was a substantial motivating factor for the adverse employment action. *Harris v. City of Santa*

*Monica*, 56 Cal. 4th 203, 232 (2013). Discrimination on the basis of "pregnancy, childbirth, or other related medical conditions" is treated as gender discrimination under California's Fair Employment and Housing Act ("FEHA"). Cal. Gov. Code. §12926(r)(1). FEHA claims are analyzed under the burden-shifting analysis from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973); *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 354 (2000). Under the *McDonnell* test, (1) the plaintiff must establish a prima facie case of discrimination; (2) the defendant then must provide a legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must show the articulated reason is a pretext for prohibited discrimination. *McDonnell*, 411 U.S. 792.

The Court finds that there is no genuine dispute of a material fact regarding the adverse employment actions being a result of Plaintiff's gender or disability. The undisputed evidence shows Defendants had legitimate, nondiscriminatory reasons for their actions and Plaintiff fails to show evidence of pretext. Accordingly, Defendants are granted summary judgment for claims one, two, and three.

i. <u>Decision Not to Promote Plaintiff to Shift-Lead</u>

Plaintiff's gender and disability did not factor into Defendants' decision not to promote her to a shift lead. Plaintiff claims that Defendants stopped discussing the promotion with her after she informed management of her pregnancy. Pl.'s Dep. 69, ECF No. 47, 40. Defendants promoted a male to the shift-lead position around the time Plaintiff was placed on leave. *Id.* at 71. James Nille was the sole decision maker regarding Plaintiff's potential promotion. Pl.'s Dep. 67-68, 64-97. In his deposition, Mr. Nille stated he did not believe Plaintiff was the right fit for the shift lead position for several reasons. Mr. Nille learned from other managers at the store that Plaintiff was no longer assigned bartending shifts due to Plaintiff's demeanor and her interactions with regular customers. Nille Dep. 75, ECF No. 46, 246. Mr. Nille identified Plaintiff's demeanor with customers as being "problematic to a point of unnecessary frustrations." *Id.* at 76, ECF No. 46, 247. He further identified Plaintiff's deficiencies in training new employees. *Id.* at 80, ECF No. 46, 249. Mr. Nille admits that while Plaintiff may have

met the qualifications for the shift-lead position, her demeanor was not right for the position at that time. *Id.* Plaintiff herself stated she was short-tempered, anger-prone, irritable, and had a low tolerance for frustration. Defs.' Mot., ECF No. 46, Ex. E.

With Defendants having established a legitimate, nondiscriminatory reason for not promoting Plaintiff, the burden shifts to Plaintiff to prove that the articulated reason is a pretext for prohibited discrimination. Plaintiff fails to do so. Plaintiff points out that another member of Blazin Wings management, Mr. Dean, told her she would be a good fit for the position. Dean Dep. 98-101, ECF No. 47, 81-84. But, Mr. Nille, not Mr. Dean, was the ultimate decision authority on the promotion. Pl.'s Dep. 67:5-10; 68:18-69:22; 94:5-17; 95:3-97:2, ECF No. 46-3. Beyond Mr. Dean's deposition, Plaintiff fails to provide any evidence other than conclusory statements that Mr. Nille's rationale is irrational, and thus evidence of a pretext. Pl.'s Mot. 16-17, ECF No. 47. Mr. Nille's decision not to promote Plaintiff is not evidence of gender or disability discrimination.

    ii. <u>Decision to Terminate Plaintiff's Employment</u>

Defendants argue that Plaintiff's gender and pregnancy had nothing to do with her termination; rather, it was a routine administrative function after Plaintiff's leave expired. Plaintiff's leave approval letter stated the only leave for which she was approved was California PDL, which ran through February 12, 2019. Pl.'s Dep. Exs. 17-19; Caraway Decl., ¶¶ 4-6. By Plaintiff's own account, she did not attempt to upload documentation requesting an extension of her leave until March 9, 2019. Pl.'s Dep. 180:11-21. This attempted document upload is almost a month after her approved leave expired and three days after Ms. Woollen discovered Plaintiff's excess leave and issued Plaintiff's termination letter. Blazin Wings policy was to terminate any employee who was determined to have taken leave beyond which they were approved. Woollen Dep. 64, ECF No. 46, 294.

Plaintiff is unable to demonstrate a pretext or other wrongdoing by the Defendants that would create a genuine issue of material fact for the jury. Plaintiff's claims that she believed her leave was to run through March 31, 2019, is belied by both the plain

language of her leave approval letter, as well as Plaintiff's deposition testimony indicating she told her doctor she was coming off leave in February and needed an extension. Pl.'s Dep. 174:15-176:4, Ex. 21. Plaintiff also ignored repeated inquiries to update Matrix on the birth of her child. Pl.'s Dep. 158:6-25; Ex. 19. Plaintiff claims that she was never notified that Blazin Wings quit using Matrix services as of December 31, 2018. This is irrelevant. For one, Plaintiff did not attempt to contact anyone, either at Matrix or Blazin Wings, until after the decision to terminate was made. Moreover, had she attempted to contact Matrix, she would have been directed to contact Blazin Wings after January 1, 2019; yet her Matrix file shows no such contact. Woollen Dep. 47:6-23; 48:2-7; 64:11-66:9; 78:9-23; 82:12-23; 100:12-16. Plaintiff cannot create a genuine dispute of material fact by failing to take simple actions that would have remedied confusion over her approved leave and subsequent return to work.

### iii. Failure to Prevent Discrimination

Plaintiff's third claim for relief (failure to prevent discrimination) necessarily fails. Defendants cannot be liable for failing to prevent discrimination if there was no discriminatory conduct. *See Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 288-89 (1998) (finding no recovery under Section 12940(i) unless a Plaintiff can demonstrate discrimination). Plaintiff's third claim is predicated on proving both her first and second claims. Since this Court enters summary judgment for the Defendants on claims one and two, summary judgment is also appropriate on claim three.

Defendants' motion for summary judgment is GRANTED as to Plaintiff's first, second, and third claims for relief.

### B. Plaintiff's Fourth Claim for Relief

A failure to accommodate claim requires Plaintiff to prove: (1) she has a disability covered by FEHA; (2) she is a qualified individual; and (3) the employer failed to reasonably accommodate her disability. *Hernandez v. Rancho Santiago Cmty. College Dist.*, 22 Cal. App. 5th 1187, 1193–1194 (2018).

Defendants argue Plaintiff was unable to perform the essential functions of the

server, bartender, or hospitality team member roles, even with accommodations, based on Plaintiff's medical limitations.  Defendants rely on the Blazin Wings corporate descriptions of each of these positions.  Plaintiff states that Defendants ignore how operations occurred at the Santee location and that there were accommodations available, such as placing a stool at the host stand or take-out cash register, that would have allowed Plaintiff to work with modified conditions.  While the Court agrees that Plaintiff's medical restrictions prevented her from doing the jobs as described by Blazin Wings, there is a genuine dispute of material fact as to the specifics of the Santee store and if there was a way for Blazin Wings to work with Plaintiff to allow her to perform her role in a different way, particularly in the splitting of the functions of the hospitality team member role.

Defendants are not required to create a new position for Plaintiff, nor are they required to excuse Plaintiff from performing the essential functions of the position.  *See Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 375 (2015).  But the fact question of the reasonableness of Plaintiff's request for accommodations and Defendants' response is appropriate for a jury.  Accordingly, Defendants' motion for summary judgment as to Plaintiff's fourth claim for relief is DENIED.

    **C.**    **Plaintiff's Fifth Claim for Relief**

Under FEHA, an employer and employee must engage in a good faith interactive process to explore accommodations for an employee's disability.  *Wysinger v. Automotive Club*, 157 Cal. App. 4th 413, 424 (2007).  Both parties move for summary judgment.  Both parties' motions are denied.  Defendants argue that because there is no reasonable accommodation available, Plaintiff's claim necessarily fails even before addressing the merits of the interactive process.  Defs.' Mot., ECF No. 46, 30.  However, as discussed in Section III(B), supra, this Court finds there is a genuine issue of material fact as to possible accommodations.

Regarding the interactive process, the Court finds there is also a genuine issue of material fact.  Plaintiff claims that upon telling management about her need for

pregnancy-related accommodations, she was brushed off with a terse, "we can't do that" or words to that effect. Pl.'s Opp'n., ECF No. 47, 22. Plaintiff claims that there was no attempt at a dialogue to discuss options and that Defendants "stopped the interactive process before it began." *Id.* Defendants argue that Plaintiff's conversations with Defendants' employees Dean and Jackson, each lasting 8-10 minutes, is a substantial conversation that satisfies the informal interactive process requirements. Defs.' Mot., ECF No. 46, 30. What is unclear from the record presented to this Court is the *substance* of those conversations. A ten-minute conversation announcing and repeating to Plaintiff that she cannot be accommodated is not an interactive process. But a quick, informal conversation explaining why any proposed accommodations are not feasible after a dialogue on proposed options could suffice. The contents of these two conversations, though, are currently unknown and should be presented to a jury. Accordingly, Plaintiff's and Defendants' motions for summary judgment as to Plaintiff's fifth claim for relief are DENIED.

### D. Plaintiff's Sixth Claim for Relief

California's worker's compensation act precludes litigation in this forum of Plaintiff's negligent supervision claim. *See Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal. App. 4th 1595, 1606 (1993) (holding that "claims for mere negligence" are barred by the workers' compensation laws, and under such laws an employee of Coit "may not sue for its allegedly negligent or improper supervision"). Plaintiff's opposition to Defendants' motion on this matter states that "Defendants knew of the risk of Dean and Jackson would discriminate against Plaintiff, and did not stop them." Pl.'s Opp'n. ECF No. 47, 23. But, in the operative complaint, Plaintiff's claim is based on failure to engage in the interactive process, not discrimination. SAC, ECF No. 22, ¶ 101. The cases cited by Plaintiff in opposition, *Fretland* and *City of Moorpark*, address discrimination carveouts to this rule. *Fretland v. Cty. of Humboldt*, 69 Cal. App. 4th 1478 (1999); *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143 (1998). But Plaintiff's claim is not based on discrimination.

Plaintiff is the master of her complaint. After two amendments to her complaint, she cannot now argue a new theory of liability for the first time in opposition to summary judgment. The Court finds Plaintiff's operative complaint is based in negligence. Accordingly, it is preempted. Defendants' motion for summary judgment as to Plaintiff's sixth claim for relief is GRANTED.

### E. Plaintiff's Seventh and Eighth Claims for Relief

Plaintiff does not oppose Defendants' motions for summary judgment on the seventh and eighth claims for relief.[3] Accordingly, Defendants' motions for summary judgment as to the Plaintiff's seventh and eighth claims for relief are GRANTED.

### F. Plaintiff's Ninth Claim for Relief

Plaintiff's wrongful termination in violation of public policy claim is based on alleged violations of the California Family Rights Act (CFRA) for not allowing Plaintiff to take medical leave and pregnancy leave. In her opposition, Plaintiff now frames this claim as being based on gender and pregnancy related violations under FEHA. Plaintiff cannot assert a new theory of liability on summary judgment. *See Coleman v. Quaker Oats*, 232 F.3d 1271, 1292 (9th Cir. 2000) (preventing litigant from proceeding under a new theory of liability on summary judgment following the close of discovery).

The Court thus analyzes Plaintiff's claim as it exists in the operative complaint. The basis for this claim under public policy is the same as the statutory claims waived in the seventh and eight claims for relief. But, if an employee's statutory wrongful termination claim fails, the employee cannot then assert a wrongful termination claim in violation of public policy. *See, e.g.*, *TRW, Inc. v. Superior Court*, 25 Cal. App. 4th 1834, 1854 (1994) (holding that a plaintiff may not assert a wrongful termination in violation of public policy claim as a fallback to a statutory claim where the underlying statutory claim

---

[3] Pl.'s Opp'n, ECF No. 47, 24. "Plaintiff respectfully requests this Court DENY Defendants' Motion for Summary Judgment on Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Ninth, Tenth and Eleventh claims for relief."

itself fails); *Featherstone v. Southern California Permanente Medical Group,* 10 Cal. App. 5th 1150, 1169 (2017) ("if an employer did not violate FEHA, the employee's claim for wrongful termination in violation of public policy necessarily fails"); *Tapia v. Artistree, Inc.*, 2014 U.S. Dist. LEXIS 101995, at *14-15 (C.D. Cal. July 25, 2014) (dismissing wrongful termination claim based on failed underlying FEHA claims).

Because Plaintiff's statutory claims fail, her public policy claim necessarily fails, too. Defendants' motion for summary judgment as to Plaintiff's ninth claim for relief is GRANTED.

### G. Plaintiff's Tenth Claim for Relief

To prove intentional infliction of emotional distress (IIED), a plaintiff must prove, "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quotations and citations omitted). Plaintiff alleges her emotional distress is the result of being fired. Pl.'s Dep. 125-26, ECF No. 46-3.

In her opposition to summary judgment, Plaintiff asserts additional causes of IIED, including comments regarding Plaintiff's pregnancy and managers questioning her ability to perform her job. Pl.'s Opp'n, ECF 47, 23. The only evidence offered regarding the cause of any emotional distress though, is in the form of Plaintiff's deposition. There, Plaintiff said it was termination from Blazin Wings that caused her distress. As discussed, supra, Defendants' decision to terminate Plaintiff's employment, according to the evidence over which there is no genuine issue, was the result of Plaintiff exceeding her approved leave. Stress can come from losing one's job. But there is no more than a scintilla of evidence that Plaintiff's firing was outrageous or done with intent to cause, or reckless disregard of the probability of causing, emotional distress. Defendants' motion for summary judgment as to Plaintiff's tenth claim for relief is GRANTED.

### H. Plaintiff's Eleventh Claim for Relief

California law "obligates employers to afford their nonexempt employees meal periods and rest periods during the workday." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1018 (2012) (citing Cal. Lab. Code §§ 226.7, 512; IWC Wage Order No. 5–2001, codified at Cal. Code Regs. tit. 8, § 11050).  The employer satisfies this obligation if "it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30–minute break, and does not impede or discourage them from doing so." *Id.* at 1040.  As interpreted by the California Supreme Court, the statute and corresponding wage order do not require employers to "police meal breaks and ensure no work thereafter is performed;" "bona fide relief from duty and the relinquishing of control satisfies the employer's obligations." *Id.* at 1040–41.

Defendants' summary judgment motion is based on Blazin Wings having compliant meal and rest period policies which were provided to and acknowledged by Plaintiff and all employees, as well as the fact that Blazin Wings management was trained in how to implement these policies.  Defs.' Mot., ECF No. 46, 37.  Defendants highlighted a pop-up message on the timeclock screen when an employee clocked in for work, directing them to notify management if they couldn't take a meal or rest break. *Id.* at 38.  Finally, employees were directed to submit a premium request to a manager at the end of their shift if they were unable to take a break. *Id.*

Plaintiff states that while she saw the pop-up message on other employees' screens, she never saw it on hers.  Pl.'s Dep. 245, ECF No. 46-3.  Plaintiff did not identify any specific dates she was denied breaks, simply stating that "she generally remembers that she was not permitted or authorized to take a meal period on any date she was scheduled because her managers did not allow her to leave any tables unattended." ECF No. 46, 388.

Here, the Court finds the Defendant demonstrated that Plaintiff failed to make a showing sufficient to establish an element of her claim.  Plaintiff can point to no specific

instances she was denied a break, fails to identify which managers, if any, denied her a break, and fails to address why, if she was unable to take breaks, she did not file a premium request.  Having procedures in place and having management trained on leave policies is not necessarily indicative of management actually following those policies.  Yet, Plaintiff's evidence fails to identify with specificity a violation by the Defendants.  Plaintiff presented testimony from another Blazin Wings employee who identified specific instances and managers relating to that employee being denied a break.  But more is required to create a genuine issue of material fact for Plaintiff's case.  Defendants' motion for summary judgment as to Plaintiff's eleventh claim for relief is GRANTED.

## CONCLUSION

The fourth claim for failure to accommodate a disability and the fifth claim for failure to engage in the interactive process remain for trial.  All other claims are resolved in Defendants' favor.

**IT IS SO ORDERED.**

Dated: February 24, 2022

_____
HON. ROGER T. BENITEZ
United States District Judge